UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

    - against -

ARCENIO ACEVEDO,
A/K/A "TUTY,"

                    Defendant.

------------------------------------X

09 Cr. 1060-04 (RWS)

SENTENCING OPINION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10-14-10

**Sweet, D.J.**

        On March 12, 2010, Arcenio Acevedo, a/k/a "Tuty," ("Acevedo" or "Defendant") pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 846. For the reasons set forth below, Acevedo will be sentenced to 37 months' imprisonment to be followed by 3 years' supervised release. Acevedo will also be required to pay a special assessment of $100.

**Prior Proceedings**

        On October 30, 2009, Indictment 09 CR 1060 (RWS) was

1

filed in the Southern District of New York. Count One charges that from September 2009 to October 1, 2009, in the Southern District of New York and elsewhere, Acevedo, Carlos Otero ("Otero"), Christian Collado ("Collado"), Enrique Marmolejos ("Marmolejos"), and others, conspired to distribute and possess with intent to distribute 500 grams and more of cocaine, in violation of 21 U.S.C. § 846.

On March 12, 2010, Acevedo appeared before the Honorable Debra C. Freeman in the Southern District of New York and allocuted to Count One pursuant to a plea agreement.

Acevedo's sentencing is currently scheduled for October 18, 2010.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Guidelines. Thus, the

sentence to be imposed here is the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed —

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for —

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

(5) any pertinent policy statement . . . [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether

that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a Guidelines sentence is warranted in the instant case.

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Acevedo's personal and family history.

**The Offense Conduct**

The following description draws from the PSR. The specific facts of the underlying conduct are adopted as set forth in that report.

In September 2009, a cooperating witness ("CW-1") located in the Bronx was introduced to Otero. Over the course of several telephone conversations, CW-1 indicated to Otero that CW-1 was looking to purchase a kilogram of cocaine. During one of these conversations, Otero told CW-1 that he had a source of supply for the cocaine CW-1 sought to purchase.

On September 30, 2009, CW-1 met with Otero and Marmolejos in Queens, New York, at which time Marmolejos introduced CW-1 to Acevedo. During this meeting, they discussed CW-1's desire to purchase a kilogram of cocaine. Acevedo told CW-1 that he had a friend who could provide CW-1 with cocain, and CW-1 and Acevedo agreed upon the price of $34,000 for the kilogram of cocaine. The transaction was to take place on October 1, 2009.

On October 1, 2009, CW-1 and a confidential source ("CS-1") drove to a location in Queens, New York, where they met with Otero, Marmolejos and Acevedo. While CW-1, CS-1 and Otero waited in their car, Acevedo and Marmolejos walked to and entered Collado's residence, a few blocks from the car.

Shortly thereafter, Acevedo and Marmolejos left

Collado's house and walked to the backyard of a second house, the residence of Acevedo and his girlfriend, located on the same block as that on which CW-1, CS-1 and Otero were waiting in the car. Acevedo and Marmolejos met Collado at this second house. A white Nissan Maxima then pulled up in the vicinity of the second house.

After Collado met with the driver of the Maxima, Otero exited the car and joined Acevedo and Marmolejos in the backyard of the second house. Marmolejos and Collado then walked backed to the car in which CW-1 and CS-1 were waiting, whereupon CW-1 exited the driver's seat and Marmolejos and Collado entered the rear passenger side of the car. Collado then handed a blue, plastic shopping bag to CS-1.

Agents from the Drug Enforcement Administration recovered the blue, plastic shopping bag from CS-1. The bag contained a quantity of a substance that field-tested positive for cocaine, with a gross weight of 552.6 grams and a purity level of 37.3%.

Marmolejos and Collado were arrested shortly thereafter. Otero and Acevedo fled from the scene. Otero was

arrested at his residence on October 5, 2009. Acevedo was arrested in Corona, New York, on October 20, 2009.

**The Relevant Statutory Provisions**

Pursuant to 21 U.S.C. §§ 846 and 841(b)(1)(B), the mandatory minimum term of imprisonment is 5 years and the maximum term of imprisonment is 40 years.

If a sentence of imprisonment is imposed, a term of supervised release of at least 5 years is required, pursuant to 21 U.S.C. §§ 846 and 841(b)(1)(B).

Defendant is not eligible for probation because the instant offense is one for which probation has been expressly precluded by statute, pursuant to 21 U.S.C. §§ 846 and 841(b)(1)(B).

The maximum fine that may be imposed is $2,000,000, pursuant to 21 U.S.C. §§ 846 and 841(b)(1)(B). A special assessment of $100 per count is mandatory, pursuant to 18 U.S.C. § 3013.

Pursuant to 21 U.S.C. §§ 841(a)(1), 846 and 853, Defendant shall forfeit to the United States a sum representing all property, real and personal, that constitutes or was derived from the proceeds traceable to the commission of the instant offense.

**The Guidelines**

The November 1, 2009 edition of the <u>United States Sentencing Commission Guidelines Manual</u> has been used in this case for calculation purposes, pursuant to § 1B1.11(a). The Court finds the following with respect to Defendant's applicable offense level, criminal history, recognition of responsibility, and term of imprisonment:

The Guideline for the violation of 21 U.S.C. § 846 is found in § 2D1.1. Since Acevedo was involved in a conspiracy to distribute and possess with intent to distribute at least 500 grams but less than 2 kilograms of cocaine, the base offense level is 26, pursuant to § 2D1.1(c)(7).

Acevedo meets the criteria set forth in subdivisions (1)-(5) of subsection (a) of § 5C1.2 (Limitation on

Applicability of Statutory Minimum Sentences in Certain Cases). The offense level is decreased two levels, pursuant to § 2D1.1(6).

Based on his plea allocution, Defendant has shown recognition of his responsibility for the offense. Pursuant to § 3E1.1(a), the offense is reduced two levels. Furthermore, an additional one-level reduction is warranted, pursuant to § 3E1.1(b), because Defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

Accordingly, the applicable offense level is 21.

Acevedo has no known criminal convictions. Therefore, he has zero criminal history points and a Criminal History Category of I, pursuant to the table at Chapter 5, Part A, of the Guidelines.

Based on a total offense level of 21 and a Criminal History Category of I, the Guidelines range for imprisonment is 37 to 46 months. The mandatory minimum term of imprisonment for

9

the instant offense is 60 months. However, pursuant to the provision of 18 U.S.C. § 3553(f), Defendant satisfies the criteria for imposition of a sentence in accordance with the applicable Guidelines, without regard to any statutory minimum sentence. Therefore, the Guidelines range for imprisonment remains 37 to 46 months.

The Guidelines range for a term of supervised release is four to five years, pursuant to § 5D1.2(c). However, Application Note 2 of § 5D1.2 reduces the Guidelines range for a term of supervised release to three to five years, pursuant to § 5D1.2(a)(1).

Defendant is not eligible for probation because the instant offense is one for which probation has been expressly precluded by statute, pursuant to § 5B1.1(b)(2).

The fine range for the instant offenses is $7,500 to $2,000,000, pursuant to § 5E1.2(c)(3)(A) and (c)(4)(A). Subject to Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative

Office of the United States Courts suggests a monthly cost of $2,270.93 to be used for imprisonment, a monthly cost of $317.32 for supervision, and a monthly cost of $2,063.19 for community confinement.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. Upon consideration of all of the relevant factors, it is concluded that the imposition of a Guidelines sentence is warranted.

**The Sentence**

For the instant offenses, Acevedo will be sentenced to 37 months' imprisonment and 3 years' supervised release.

Acevedo is directed to report to the nearest United States Probation Office within seventy-two hours of release to

commence his term of supervised release.  It is recommended that Acevedo be supervised by the district of his residence.

As mandatory conditions of his supervised release, Acevedo shall:  (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; and (4) cooperate in the collection of DNA as directed by the probation officer.  The mandatory drug testing condition is suspended due to the imposition of a special condition requiring drug treatment and testing.

Furthermore, the standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special conditions:

(1)  Defendant will participate in a program approved by the United States Probation Office, which program may include testing to determine whether Defendant has reverted to using drugs or alcohol.  The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse treatment provider, as approved by the probation officer. Defendant will be required to contribute to the costs of

12

services rendered (co-payment), in an amount determined by the probation officer, based on ability to pay or availability of third-party payment.

(2) Defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

In consideration of all the factors set forth in 18 U.S.C. § 3572(a), it does not appear that Defendant is able to pay a fine, and so the fine in this case shall be waived. A special assessment of $100, payable to the United States, is mandatory and shall be due immediately.

Defendant shall forfeit to the United States his interest in any and all property constituting or derived from any proceeds obtained directly or indirectly as a result of the

narcotics conspiracy and any and all property used or intended to be used in any manner or part to commit the narcotics conspiracy.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for October 18, 2010.

It is so ordered.

New York, NY
October 14, 2010

ROBERT W. SWEET
U.S.D.J.